UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Civil No. 2:07-CV-00141

MARSHALL KEITH DAVIS,          )
                               )
                 Petitioner,   )
                               )
          v.                   )
                               )
ULRIKE STROUT,                 )
                               )
                 Respondent.   )

**MOTION TO DISMISS PETITION AND TO IMPOSE SANCTIONS**

**Introduction**

Petitioner Marshall Davis has filed a petition with this Court alleging that

Respondent Ulrike Strout, the mother and custodian of his son J.S., has unlawfully

abducted J.S. from Germany.  This petition is frivolous; substantive factual allegations

therein are false and were known by Petitioner to be false; and the claim has been brought

with the apparent intent to harass.  As is further explained below, Mr. Davis' claim that

Ms. Strout has unlawfully abducted J.S. fails and should be dismissed with prejudice.  In

addition, Petitioner requests this Court to impose sanctions and attorney fees on

Petitioner and Petitioner's attorney.

**Facts**

Respondent Ulrike Strout is a German citizen residing in Maine.  *Declaration of*

*Ulrike Strout ("Strout Dec.") ¶ 1.*  Petitioner Marshall Davis is an American citizen who,

according to his pleadings, resides in Germany.  Together, they are the parents of a

minor, J.S., born on June 11, 2002 in Bad Kreuznach, Germany.  *Strout Dec. ¶ 2.*  Ms. Strout and Mr. Davis are not and have never been married and stopped living together sometime in 2004.  *Id. ¶¶ 2-3.*  J.S. has resided with Ms. Strout for his entire life.  *Id. ¶ 3.*

In 2006, Ms. Strout planned to come to the United States to reconcile with Phillip Strout, her ex-husband and the father of her other three children.  *Id. ¶ 5.*  Mr. Davis brought an action against Ms. Strout in the District Court of Rockenhausen, Germany, challenging her plan to bring J.S. with her to the United States.  *Id.*  On November 23, 2006, the Rockenhausen court issued a consented-to order (the "Order") that states:

> The parents mutually agree that the mother may take [J.S.] to America.
> The father may host the child during the summer vacation period either in
> the USA, where his mother lives, or take the child with him to Germany.
> The specific arrangement must be mutually agreed to in advance.

Attachment 1 (Certified Translation obtained by Ms. Strout); *see* Attachments 2 (Original Order, in German) and 3 (Uncertified Translation supplied by Mr. Davis' attorney).  The Order goes on to state that "The settlement agreement was then once again read aloud to the parents, whereupon it was approved by both of them."  Attachment 1.

After receiving the order of the German court, Ms. Strout and several of her children, including J.S., moved to the United States where they have been living with family.  *Strout Dec. ¶ 7.*  Ms. Strout has remarried Mr. Strout and is living in a stable household with the entire family.  *Id.*  She intends to live in Maine for the foreseeable future.  *Id.*  The child J.S. has started school here in Maine and is in the kindergarten.  *Id.*  Although Ms. Strout is no longer on good terms with Mr. Davis, she has always allowed

him to visit his child under reasonable circumstances and is willing to allow him to visit

J.S. in the future under reasonable circumstances. *Id. ¶ 8.*

On March 18, 2007, Mr. Davis filled out an application to initiate an action

pursuant to the Hague Convention on the Civil Aspects of International Child Abduction

(the "Hague Convention"). Attachments 4 (Application in English) and 5 (Application in

German).[1] On April 4, 2007, the German Central Authority (within the meaning of the

Hague Convention) sent this application to the United States Central Authority.

Attachment 6 (4/4/07 Letter in English). On May 8, 2007, the German Central Authority

followed up by sending an English translation of excerpts of the November 23, 2006

order (referred to above as "the Order"). Attachment 7 (5/8/07 Letter in English).

On August 15, 2007, Mr. Davis filed this action. Based on her knowledge of Mr.

Davis' personality, Ms. Strout believes that this action was brought with the intent to

harass her and her family and to force her to incur attorney fees. *Strout Dec. ¶ 9.* On

August 23, 2007, Mr. Davis' attorney, William R. Harrison, sent Ms. Strout a package of

documents (the "Package"). Attachment 8. That Package included almost every

document cited herein.[2]

After being served with the pending order to Show Cause on August 20, 2007, Ms.

Strout actively searched for an attorney willing and able to assist her. *Strout Dec. ¶ 10.*

This search was hindered by Ms. Strout's lack of a driver's license, her location outside

of Portland, and her reliance on family members for transportation. *Id.* Undersigned

---

[1] It appears that Mr. Davis filled out the application in duplicate, once in English and once in German.
[2] The Package did not include Attachment 11 (Letter to Ms. Strout from Youth Welfare Office).

3

counsel was retained on Wednesday, September 5, 2007, and received all documents

from Ms. Strout on the following day. *Id.* This Motion was sent to Petitioner's attorney

on Monday, September 10, 2007 before filing.


**I.    The Petition is without Legal or Factual Basis and should be Dismissed.**

Mr. Davis' Petition fails to meet the standards set forth in the Hague Convention

and related United States law. As further discussed below, his Petition should be

dismissed with prejudice and Respondent will request that the Court impose sanctions

against Petitioner and his attorney for filing a frivolous action.

The Hague Convention on the Civil Aspects of International Child Abduction (the

"Hague Convention") was drafted at the Hague on October 25, 1980 and is enabled by

federal law. Hague Convention on Civil Aspects of International Child Abduction

(hereafter cited as "Hague art. X" and attached for reference as Attachment 9); 42 U.S.C.

§ 11601 *et seq.* The Hague Convention is intended in part to "secure the prompt return of

children wrongfully removed to or retained in any Contracting State." Hague art. 1. In

order to prevail in an action seeking the return of a child, a petitioner must show by a

preponderance of the evidence that "the child has been **wrongfully removed or retained**

within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A) (emphasis added).

The Hague Convention provides that a removal "is to be considered wrongful where (a) **it**

**is in breach of rights of custody** attributed to a person . . . under the law of the State in

which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either jointly

4

or alone, or would have been so exercised but for the removal or retention." Hague art. 3 (emphasis added).

### 1.    Mr. Davis' Claim Fails because He had No Custodial Rights over J.S.

Under the Convention's terms, "a child's removal is wrongful only if one of the parent's custody rights are breached." *Gonzalez v. Gutierrez*, 311 F.3d 942, 948 (9th Cir. 2002). "No wrongful removal exists without the possession of custodial rights by the parent seeking the child's return." *Id.* There are three potential sources of custodial rights under Article 3: operation of law; judicial or administrative decision; or an agreement having legal effect under the law of the State. Hague art. 3; *Shalit v. Coppe*, 182 F.3d 1124, 1129 (9th Cir. 1999).

The German Civil Code provides that when an unmarried couple has a child, the default custody arrangement is full custody with the mother.[3] German Civil Code, Title 5 § 1626(a); *see* Attachment 10 (§§ 1626 – 1626(d) in German). In order to endow the father with *any* custodial rights, the mother and father must sign a joint declaration before a public notary or a court. *Id.* Ms. Strout has never signed such a declaration. *Strout Dec. ¶ 4.* The declaration must then be filed with the local Youth Welfare Office. German Civil Code, Title 5 § 1626(d). The local Youth Welfare Office has confirmed that it does not have such a declaration on file. Attachments 11 (Letter to Ms. Strout from Youth Welfare Office) and 12 (certified translation). In the absence of such a

---

[3] The Hague Convention permits courts to consider the laws of other countries without requiring the usual procedures for proof of that law. Hague art. 14; *Shalit v. Coppe*, 182 F.3d 1124, 1129 n. 7 (9th Cir. 1999) (holding that "an attorney's declaration as to the application of another country's law is generally acceptable in Hague Convention cases").

declaration, Ms. Strout retains <u>full custodial rights</u> of J.S. and Mr. Davis has <u>no custodial rights</u>.[4]

The unambiguous language of the Hague Convention states that a removal "is to be considered wrongful where (a) **it is in breach of rights of custody** attributed to a person."  Hague art. 3 (emphasis added).  Here, Mr. Davis had no rights of custody and therefore any removal that may have taken place could not have been wrongful.

    2.    **Mr. Davis Consented to the Removal and/or Retention of J.S.**

Even if Mr. Davis may have imagined that he had some custodial rights to J.S., he gave his consent before a court to Ms. Strout's move to the United States.  Consent is a defense to a petition for return and any claim Mr. Davis may have thought he had to the return of J.S. has been extinguished by his agreement to the German court's Order.

In a case where a child has in fact been wrongly removed or retained, it is a defense to an action for the return of the child that the petitioning parent consented to the removal or retention.  Hague art. 13(a) ("The judicial . . . authority . . . is not bound to order the return of the child if the person . . . which opposes its return establishes that . . . the person . . . having the care of the person of the child . . . had consented to . . . the removal or retention"); *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 793-795 (9th Cir.

---

[4] Confirmation of this analysis is contained in the letter sent from the German Central Authority to the United States Central Authority:

    It seems to me that the mother has sole custody according to article 1626 a of the German Civil Law and the father has "only" visitation rights . . . .  If non married persons (like in this case) haven't signed a declaration that they wish to exercise custody jointly, then the mother has sole custody.

Attachment 7 at 1.

2001) (citing Article 13(a) and stating that the petitioning mother "**lost her right** to petition for [the child's] return **when she consented** to [the father's] removal and retention of her") (emphasis added).  The parent opposing the petition for return bears the burden of proof to demonstrate by a preponderance of the evidence that this defense applies.  42 U.S.C. § 11603(e)(2)(B).

The Order entered by the German court on November 23, 2006 unambiguously establishes Mr. Davis' consent to Ms. Strout's emigration to the United States with J.S. Attachments 1-3.  The Court issuing that order was careful to state that: both parties were represented by counsel; that the parents were "questioned in depth"; that the parents "mutually agree that the mother may take [J.S.] with her to America"; and that the settlement agreement was read aloud to both parents before being "approved by both of them."  *Id.*

Mr. Davis may have changed his mind about granting consent and wished to revoke that consent.  However, consent, once given, extinguishes the right to return granted by the Hague Convention.  *Gonzalez-Caballero*, 251 F.3d at 794 ("Under the Hague Convention's plain, unambiguous language, consent before the removal or retention . . . **extinguishes the right of return**") (emphasis added).

## II.    The Frivolousness of the Petition Warrants an Award of Attorney Fees against Petitioner and his Attorney.

As demonstrated above, the Petition is wholly without merit.  It also contains multiple substantive misrepresentations.  This Court has the power to order Petitioner to pay Ms. Strout's attorney fees if it determines that he "acted in bad faith, vexatiously,

wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-259 (1975) (providing exceptions to standard American Rule under which parties ordinarily bear their own costs). A party acts 'vexatiously' if his actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Local 265 v. Nonotuck Resource Assocs., Inc.*, 64 F.3d 735, 737-738 (1st Cir. 1995).

Petitioner and his attorney have shown that they had documents in their possession which contradicted their sworn representations or, at the least, signaled that they should research their allegations further. The Package sent by Petitioner's attorney to Ms. Strout on August 23, 2007 contained, with only one exception, *every significant document* cited in this Motion.[5] This included the German Order stating that Mr. Davis consented to Ms. Strout's departure for the United States; a certified translation of the key paragraph of that order; and a letter from the German Central Authority stating that under German Civil Law, Ms. Strout had full custody of J.S.

Notwithstanding this information available to him, Mr. Davis filed a Declaration Establishing the Habitual Residence of J.S. (the "Declaration") that he signed under penalty of perjury. The paragraph above his signature states:

> I have read the foregoing Declaration . . . and know the contents thereof; that the same are true to the best of my knowledge and belief, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

[5] The sole substantive document not contained in the Package was the letter from the Youth Welfare Office to Ms. Strout confirming that they did not have a declaration of shared custody on file. However, as Mr. Davis' signature was required for such a declaration, he would have had knowledge that no such declaration existed and would not have needed independent confirmation of that fact in order to avoid making a misrepresentation in his Petition.

*Declaration* at 2. In the Declaration, Mr. Davis avers that "The residence of J.S. . . . is as follows: December 11, 2006: **Without consent of Petitioner**, residing with Respondent Ulrike Strout; whereabouts unknown but believed to be 60 Colonial Road, Westbrook, ME 04092." *Id.* at 1 (emphasis added). Not only does Mr. Davis correctly give Ms. Strout's address, he asserts that the December 11 move to that address (and out of Germany) was without his consent. This assertion conflicts with the Order entered three weeks earlier, a translation of which was contained in the Package, which states that "The parents are in agreement that the mother may take [J.S.] to America." Attachment 1 at 2.

Mr. Davis goes further: he states in his Declaration that "Upon information and belief, Respondent Ulrike Strout currently has physical custody of the child [J.S.], **without my consent or an order of any court of the State of Maine, any other state, Germany, or any other foreign country**." *Declaration* at 2 (emphasis added). Needless to say, this is directly contradicted by German law, which gave Ms. Strout full custody over J.S. and by the Order, to which Mr. Davis consented, which granted Ms. Strout permission to move with J.S. to the United States. Attachment 10 at 2 (German Civil Code); Attachment 1 at 2 (Order).

Mr. Davis' attorney, William R. Harrison, Esq., filed a Petition for the Return of Child to the Petitioner (the "Petition") on Mr. Davis' behalf. The Petition is verified by Attorney Harrison, who states:

> the above document is true of my own knowledge, except as to those matters which stated on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of United States that the foregoing is true and correct.

*Petition* at 5.  Like the Declaration, the Petition contains factual misrepresentations that are contradicted by documents in Attorney Harrison's possession.  Specifically, the Petition states that "[u]pon information and belief, Petitioner has a **right of custody** within the meaning of Articles Three and Five of the Convention in that there has been no adjudication of custody under the laws of Germany."  *Id.* at 2 (emphasis added).  The Petition cites Section 1626 and declares that the law contained therein gave Petitioner "**a viable claim as the proper legal guardian** of the child."  *Id.* at 2 (emphasis added).

Under German law, Petitioner did <u>not</u> have any rights of custody because Ms. Strout had full custodial rights of J.S.  German Civil Code, Title 5 § 1626(a).  Indeed, a letter from German officials contained in Attorney Harrison's files and sent in the Package clearly stated this conclusion (in English!).  Attachment 7.  There is nothing whatsoever in German Civil Code Title 5 §1626 that gives Petitioner any claim to guardianship of J.S..  To the contrary, that law, which Petitioner cites in his Petition, clearly gives Ms. Strout full custody in the absence of a joint declaration by the parties.

The Petition further states that "[u]pon information and belief, on or about December 11, 2006, Respondent, with the assistance of others known and unknown, **wrongfully removed the child from Germany** within the meaning of Article Three of the Convention."  *Petition* at 2.  Again, this is directly contradicted by the Order.  An even more egregious statement follows: "Upon information and belief, Germany has issued an order/decree for custody of the child **in favor of Petitioner**."  *Id.* at 3.  Of course, this contradicts Petitioner's earlier statement that no such adjudication had taken

place.  Further, to Ms. Strout's knowledge, no such order has ever been issued.  *Strout Dec. ¶ 4.*  If this statement were true, it would present a direct conflict with the Order that *was* in fact issued which allowed Ms. Strout to emigrate with J.S. to the United States.

Mr. Davis and his attorney's actions in this matter meet the *Local 265* standard for vexatious behavior.  *Local 26*, 64 F.3d at 737-738 (defining vexatious as "frivolous, unreasonable, or without foundation").  As a cursory review of the German court's Order, the interpretive letter, and German law would have indicated, Mr. Davis' claim to custody (which is an essential prerequisite to a Hague Convention application) is frivolous, unreasonable, and without foundation because, as discussed above, he has never had custodial rights over J.S.

Ms. Strout has been forced to put her life on hold and fight for the custody of her child.  In a very short amount of time, she has been forced to find and hire an attorney in an unfamiliar city and comply with this Court's Show Cause order.  None of this would have been necessary absent Mr. Davis' filing of his meritless Petition.  These facts present precisely the situation anticipated by *Local 265* and merits the award of attorney fees and costs against Mr. Davis and his attorney.

## Conclusion

This case presents no novel legal or difficult factual issues.  Ms. Strout is the mother of a child, J.S., who was born out of wedlock in Germany.  Under German law she has sole custody of this child.  She came to the United States with J.S., pursuant to a court order to which Mr. Davis expressly consented.  Mr. Davis is precluded from making a claim under the Hague Convention that J.S. was wrongfully removed or

retained because he is and was not J.S.'s custodian and (even if he thought he were)
because he consented to the move.  His petition should therefore be dismissed with
prejudice.  Unfortunately, Mr. Davis and his attorney attempted to make a case they do
not have.  Their filings with this court contain misrepresentations that they knew or
should have known were false and merit the award of attorney fees against Mr. Davis and
his attorney.


Dated:  September 10, 2007

                                                    /s/ Peter L. Murray
                                                    Peter L. Murray
                                                    Email: *pmurray@mpmlaw.com*

                                                    /s/ Richard L. O'Meara
                                                    Richard L. O'Meara
                                                    Email: *romeara@mpmlaw.com*

                                                    /s/ Kelly W. McDonald
                                                    Kelly W. McDonald
                                                    Email: *kmcdonald@mpmlaw.com*

                                                    Attorneys for Ulrike Strout

MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207)773-5651

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I electronically filed the within

**MOTION TO DISMISS PETITION AND TO IMPOSE SANCTIONS** with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the

following:

    William Ridgeway Harrison, Esq.

Dated:  September 10, 2007

                                         <u>/s/ Kelly W. McDonald</u>
                                         Kelly W. McDonald
                                         Email: *kmcdonald@mpmlaw.com*

                                         Attorney for Respondent Ulrike Strout

MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651

S:\S\Stut01\Pleadings\M-Dismiss-2.doc

13